United States District Court
Southern District of Texas

**ENTERED**

August 20, 2024

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KRISTEN FLYNN, | § | CIVIL ACTION NO |
| Plaintiff, | § | 4:23-cv-04087 |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| MICHAEL VAN | § | |
| METER, *et al*, | § | |
| Defendants. | § | |

OPINION AND ORDER
ON MOTIONS TO DISMISS

The motions to dismiss brought by the many and varied Defendants remaining in this action are granted. Dkts 20, 21, 23, 26 & 27.

This action is dismissed in its entirety.

1. Background

Plaintiff Kristen Flynn was a medical student who after medical school started her residency with UT Health System in Summer 2022. Dkt 19 at ¶36. She was ultimately terminated from that program in Summer 2023, upon an alleged finding that she was unfit for duty and suffered from various emotional problems. This wide-ranging lawsuit is her reaction, stating claims including defamation, violation of the Americans with Disabilities Act, breach of contract, and violations of procedural due process.

Named as Defendants are the entities of Memorial Hermann Health System, Memorial Hermann Texas Medical Center, Harris Health System, Lyndon B. Johnson

Hospital, McGovern Medical School, and University of Texas Health Science Center. Also named as individuals are Dr. Carrie Bakunas, Dr. Gregory Beaulieu, Dr. Bentley Bobrow, Monica Guidry, Dr. Zheng Ma, Dr. Markey McNutt, Dr. Michael Van Meter, Dr. Stacey Pisklak, and Dr. Jessica Wilson. For ease of reference, given joint representation of interests in some respects, the following collective definitions will be used:

- o *The Memorial Hermann Defendants* are Memorial Hermann Health System and Memorial Hermann Texas Medical Center;
- o *The Harris Health Defendants* are Harris Health System and Lyndon B. Johnson Hospital; and
- o *The UT Health Defendants* are University of Texas Health Science Center, McGovern Medical School, Ma, Bakunas, Guidry, Bobrow, Van Meter, and Wilson.

Separately represented, and thus not included within any of these collective groups, are McNutt (a physician), Beaulieau (a psychologist), and Pisklak (a psychiatrist). Dkt 19 at ¶¶12, 13, 17.

The first amended complaint alleges as follows.

When she was nineteen, Flynn was diagnosed with a cholesterol-related disease called *cholesteryl ester storage disease*. Id at ¶23. She takes a drug called Kanuma once a week to cope with her condition. A one-month supply is alleged to cost $400,000. Id at ¶24.

Flynn was accepted to a medical residency with UT Health System following medical school. In June 2022, she underwent a medical examination with McNutt as part of the onboarding process for that residency. Id at ¶39. He allegedly refused to refill her Kanuma prescription and falsely claimed that he had asked Kanuma's manufacturer for a free supply. Id at ¶40. Because Flynn didn't receive her Kanuma, she "almost died" before taking an emergency flight to Chicago to refill her prescription. Id at ¶41. She alleges that McNutt refused to refill her prescription in

order to "keep her from becoming a UT resident [so] UT's self-funded health plan would not have to pay the exorbitant cost of Kanuma." Id at ¶42.

Despite these events, Flynn began her residency in Emergency Medicine at McGovern Medical School in July 2022. During that time, she worked at Memorial Herman Hospital and LBJ Hospital. Id at ¶36.

Several months into her residency, Flynn met Bakunas, who treated her in a "terse and demeaningly sarcastic manner," and implied that she knew of Flynn through reputation. Id at ¶44. Flynn alleges that Bakunas later sabotaged her by telling her to not follow up with a patient and by reporting her for her conduct. Ibid. Flynn alleges that others at the hospital—Ma and Van Meter—made similar claims and improperly accused Flynn of harmfully restraining a patient. Id at ¶45.

In December 2022, after these allegedly false claims were made by Defendants, UT Health filled Flynn's Kanuma prescription. Id at ¶46–47.

In January 2023, two days after UT Health was billed for Flynn's "high cost" prescription, Van Meter and Bobrow suspended her from the residency program on the grounds that she was unfit for duty. Van Meter, Bobrow, Wilson, Pisklak, Beaulieu, Guidry, and Bakunas "accused Plaintiff of having a psychiatric disease and of having various emotional problems." Dkt 19 at ¶49. Flynn alleges that these Defendants knew that these accusations were untrue when they made them. Ibid. She also believes that the adverse action was taken against her because UT Health didn't want to pay for her Kanuma prescription. Dkt 19 at ¶48; see also Dkt 16 at 11.

In February 2023, Van Meter required Flynn to undergo psychiatric testing, despite her allegedly "unblemished" performance evaluations. Dkt 19 at ¶50. Beaulieu conducted the test and allegedly "falsified and altered the testing results" to make Flynn appear impaired, despite "knowing Plaintiff was professionally competent, and knowing that Beaulieu had falsified the

3

results." Id at ¶¶51–52. When Flynn tried to apply to other residency programs, Bobrow and Van Meter allegedly "lied to at least one other residency director in California and stated that Plaintiff was unfit for duty," and later reported Flynn to the Texas Medical Board. Id at ¶54–55.

Flynn was dismissed from the residency program in June 2023. Id at ¶57. She initiated this lawsuit in October 2023, stating claims for (i) violations of the Americans with Disabilities Act, (ii) violations of the Federal Whistleblower Act, (iii) defamation, (iv) breach of contract, and (v) violation of procedural due process. Dkt 1. Defendants filed several motions to dismiss. Dkts 9, 11, 14, 15 & 16. In lieu of response, Flynn filed her first amended complaint. Dkt 19. She maintained each of the original claims but amended her breach of contract claim to only include the UT Health Defendants.

Defendants then filed six motions to dismiss. See Dkts 20 (Memorial Hermann Defendants), 21 (Harris Health Defendants), 22 (McNutt), 23 (UT Health Defendants), 26 (Beaulieu), & 27 (Pisklak). At the initial conference and hearing in June 2024, Flynn narrowed her claims:

- o She withdrew her cause of action under the Whistleblower Act, which was dismissed with prejudice. See Dkt 19 at ¶¶68–74.

- o She also withdrew her defamation claim as against McNutt, which was dismissed with prejudice. See Dkt 19 at ¶¶63–67.

- o And in connection with her fifth claim for relief for violation of procedural due process, Flynn withdrew her prayer for injunctive relief to obtain her reinstatement as a resident at UT Health, because she had been admitted to another residency program elsewhere. See Dkt 19 at ¶¶88–93.

Dkt 58 at 1–2 (minute entry and order). Last, she has since entirely dismissed her claims with prejudice as against McNutt. Dkt 63.

4

Thus remaining for resolution on motion to dismiss are the claims for (i) violation of the ADA by all remaining Defendants, (ii) defamation by all remaining Defendants except the Harris Health Defendants, against whom such claim isn't pleaded; and (iii) breach of contract and procedural due process violations by the UT Health Defendants.

2.   Legal standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff's complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) allows the defendant to seek dismissal if the plaintiff fails "to state a claim upon which relief can be granted."

Read together, the Supreme Court holds that Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v Iqbal*, 556 US 662, 678 (2009), quoting *Bell Atlantic Corp v Twombly*, 550 US 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v Taylor*, 503 F3d 397, 401 (5th Cir 2007), quoting *Twombly*, 550 US at 555.

A complaint must therefore contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 US at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 US at 678, citing *Twombly*, 550 US at 556. This standard on plausibility is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id at 678, quoting *Twombly*, 550 US at 557.

5

Review on motion to dismiss under Rule 12(b)(6) is constrained. The reviewing court must accept the well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Walker v Beaumont Independent School District*, 938 F3d 724, 735 (5th Cir 2019) (citation omitted). But courts don't accept as true what are simply conclusory allegations, unwarranted factual inferences, or legal conclusions. See *Gentiello v Rege*, 627 F3d 540, 544 (5th Cir 2010). The court must also generally limit itself to the contents of the pleadings and its attachments. *Brand Coupon Network LLC v Catalina Marketing Corp*, 748 F3d 631, 635 (5th Cir 2014) (citation omitted).

3.   Analysis

The various motions to dismiss attack Flynn's claims on the merits and, in some respects, as to jurisdiction. But a significant question exists as to which arguments Flynn even responded. Waiver will thus be addressed first.

a.   Waiver

The above background sets out, as best discerned, a restrained and straightforward presentation of the allegations. But the first amended complaint is far from that. Its opening line states that it "tells the story of systemic corruption, fraud, and dishonesty at the John P. and Kathrine G. McGovern Medical School and Affiliated Hospitals Residency Training Program." Dkt 19 at ¶1. And what does that involve? Something at best tangentially related to the duration of Flynn's residency and termination from it. The initial allegations talk about "fake Kanuma trials" involving "a now defunct and disgraced drug and research company called Synageva," which (somehow and for some reason) "in 2013 and/or 2014 and continuing thereafter UT Health seized upon the fake Synageva trials and began to promote their legitimacy on the UT Health websites." Id at ¶¶23–34. The fantastical nature of such advocacy was all the more apparent at hearing, where Flynn's counsel at several points insisted, even beyond the pleadings, that "there's no such thing as a UT residency" and that UT Health "exists only as a brand" because it "does not have a hospital, does not have an

emergency room, does not have an operating room" and "simply sells its name to private institutions" like the Memorial Hermann Defendants. Dkt 61 at 10, 12.

Charitably stated, this doesn't make much sense. Still, the procedural posture requires that the well-pleaded allegations be accepted as true. And so, as with the factual background, a restrained and straightforward march will also proceed through the analysis on all of the various causes of action alleged by Flynn. But address on the merits will only proceed to the extent that she hasn't abandoned particular claims or failed to defend them.

Flynn filed five separate response briefs with respect to the remaining Defendants, which (not counting the title page and signature block) amount *in their entirety* to little over three pages (Dkt 29, response to Memorial Hermann Defendants), five pages (Dkt 30, response to UT Health Defendants), four pages (Dkt 32, response to Harris Health Defendants), three and a half pages (Dkt 36, response to Beaulieu), and one and a half pages (Dkt 38, response to Pikslak) of written advocacy. See also Dkt 31 (response to McNutt, one and a half pages).

In sum, and notwithstanding the complicated array of facts and causes of actions alleged, Flynn devotes at best a single page to any single argument raised by the various Defendants. What's more, a wide array of arguments by the various Defendants go entirely unaddressed in the various responses.

The Fifth Circuit holds, "A party's concession of an issue means the issue is waived and may not be revived.*" Smith v United States*, 328 F3d 760, 770 (5th Cir 2003). And it sternly admonishes that failure to defend or to pursue a claim beyond the complaint constitutes abandonment of that claim. *Black v North Panola School District*, 461 F3d 584, 588 n 1 (5th Cir 2006). This means that "failure to brief an argument in the district court waives that argument in that court." *Magee v Life Insurance Company of North America*, 261 F Supp 2d 738, 748 n 10 (SD Tex 2003); see also *Rollins v Greenberg Traurig, LLP*, 2021 WL 3556205, *5 (SD Tex), aff'd sub

nom *Rollins v Texas*, 2022 WL 3716481 (5th Cir); *Bates v US Bank NA*, 2021 WL 5355555, \*2 (SD Tex).

Abject deficiency of argument in response can also constitute waiver. As stated by the Fifth Circuit in *Nichols v Enterasys Networks, Inc*, "Where analysis is so deficient, this court has considered the issue waived for inadequate briefing." 495 F3d 185, 190 (5th Cir 2007) (citation omitted); see also *Gurung v Holder*, 587 Fed Appx 834, 837 (5th Cir 2014). And briefing is deficient when it "fails to identify a theory as a proposed basis for deciding the claim, and does not explain, in any perceptible manner," why the court should accord the desired relief. *Willis v Cleco Corp*, 749 F3d 314, 319 (5th Cir 2014).

Given the paucity of response by Flynn, the various Defendants argue waiver in reply across several fronts:

- o The Harris Health Defendants observe that Flynn (i) didn't respond to argument that she didn't exhaust administrative remedies with respect to the ADA claims, (ii) made no responsive argument as to the Title I and II claims other than mere reference, without explanation, to ¶¶1–67 of her first amended complaint, while also (iii) appearing to make argument as to the Title III claim with respect to Harris *County* (who isn't a party) rather than to Harris *Health*. Dkt 33 at 2–3.

- o The Memorial Hermann Defendants argue that Flynn waived opposition to dismissal of her claims against them for violation of the ADA because she (i) only responded to their arguments on the defamation cause of action, (ii) while making only conclusory argument as to the *employer* and *adverse action* issues as to her ADA claim. Dkt 34 at 4. The Court also notes that (iii) Flynn didn't respond to contention that the first amended complaint is an example of improper "group pleading" or "shotgun pleading" as against the Memorial Hermann Defendants on that claim.

o The UT Health Defendants note that Flynn waived opposition to dismissal of the ADA claims on the merits because she (i) only responded to jurisdictional arguments regarding their sovereign immunity, while (ii) in no way responding to their arguments about inadequate pleading of the ADA claims on the merits. Dkt 37 at 9 & n 4.

o Beaulieu points out that Flynn didn't respond to his argument regarding her lack of standing against him, given his assertion of sovereign immunity from suit, thus waiving opposition to his dismissal from this action on that basis. Dkt 39 at 2.

o Pisklak argues that Flynn waived opposition to dismissal of the ADA claim as against her because she didn't respond to argument that, as pleaded, it is an example of improper "shotgun pleading," given that ¶52 of Flynn's first amended complaint contains only conclusory statements about her that don't directly deal with liability under the ADA, and Flynn makes only conclusory reference to ¶¶49–58 without explanation or connective argument. Dkt 40 at 3.

These arguments are valid, and waiver is found as to each instance. A wide range of dismissals are thus proper and will be entered as follows:

o The claims against the Harris Health Defendants for violation of the ADA will be dismissed due to waiver, which were the only remaining claims pleaded against them.

o The claims against the Memorial Hermann Defendants for violation of the ADA will be dismissed due to waiver, leaving only the defamation cause of action as against them (although the Title I ADA against them will be addressed additionally below).

9

o   The claims against the UT Health Defendants for violation of the ADA will be dismissed on the merits due to waiver, rendering unnecessary any need to address jurisdictional arguments as to sovereign immunity in that regard.

o   The claims against Beaulieu will be dismissed in their entirety due to waiver of argument as to his immunity from suit.

o   The claims against Pisklak for violation of the ADA will also be dismissed due to waiver, leaving only the defamation claim against her.

In short, it's not the responsibility of the Court to hunt for a legal theory or identify arguments to prop up a party's insufficient briefing. Flynn here has provided "little argument" as to any particular issue and little to "no authority to support" any defense even mounted. *PlainsCapital Bank v Keller Independent School District*, 746 Fed Appx 355, 364 (5th Cir 2018). What remains beyond such waiver will be addressed next.

b.   Sovereign immunity of the UT Health Defendants

As summarized by the Fifth Circuit, immunity under the Eleventh Amendment "applies to suits between a state and a citizen of another state," while state sovereign immunity "generally prohibits private suits against states (including the plaintiff's home state)." *Tercero v Texas Southmost College District*, 989 F3d 291, 296 (5th Cir 2021) (citation omitted). The general bar of sovereign immunity extends not only to states, but also "to claims against 'state officials' in their official capacity when the state is the real party in interest." *Tawakkol v Vasquez*, 87 F4th 715, 718 (5th Cir 2023) (citation omitted).

Two other principles are important at the outset.

First, the Fifth Circuit observes, "A state's immunity from suit is not absolute." *Meyers ex rel Benzing v Texas*, 410 F3d 236, 241 (5th Cir 2005), citing *College Savings Bank v Florida Prepaid Postsecondary Education Expense*

*Board*, 527 US 666, 670 (1999). An individual may sue a state in two circumstances, being (i) if Congress abrogates the state's immunity by authorizing such a suit, and (ii) if a state waives its immunity by consenting to suit. *Meyers ex rel Benzing*, 410 F3d at 241 (internal citations omitted).

Second, the Texas Supreme Court holds that state universities are state agencies that enjoy sovereign immunity. *Lowe v Texas Tech University*, 540 SW2d 297, 298 (Tex 1976); see also Tex Gov Code §572.002(10)(B). And so, the Fifth Circuit "has consistently found that the University of Texas, and its health institutions, are protected by sovereign immunity." *Lewis v Anderson*, 2009 WL 10680365, *2 (SD Tex) (compiling cases). As such, the UT Health System and McGovern Medical School are considered agencies of the State of Texas, and the claims against them must be analyzed in the context of sovereign immunity. See *Lazaro v University of Texas Health Sciences Center*, 830 SW2d 330, 332 (Tex App—Houston [14th Dist] 1992, writ denied); *Alaoui v University of Texas Health Sciences Center at Houston*, 2021 WL 4480745, *2 (SD Tex); *Cohen v University of Texas Health Sciences Center*, 2012 WL 12904116, *1 (ED Tex).

i.  Violation of the ADA

Analysis of sovereign immunity under the ADA can be quite complicated, given differing rules that have been stated to apply to claims under Title I (as to disability discrimination by employers), Title II (as to disability discrimination by State and local governments), and Title III (as to disability discrimination by places of public accommodation). See *Sullivan v Texas A&M University System*, 986 F3d 593, 595–96 (5th Cir 2021) (as to Title I); *Block v Texas Board of Law Examiners*, 952 F3d 613, 617 (5th Cir 2020) (as to Title II); *Glueck v Nat'l Conference of Bar Examiners*, 2017 WL 5147619, at *5 (WD Tex) (as to Title III, while noting no clear Fifth Circuit precedent).

But as noted above, while Flynn to some extent addressed those issues in her response, she entirely failed to defend these claims on the merits as against the UT Health Defendants. Compare Dkt 23 at 23–27 (motion as

11

to merits, arguing failure to address disability, whether Title II applies to individuals, and whether UT Health Defendants are public entities within meaning of Title III), with Dkt 30 (response). The claims have thus already been dismissed above, mooting the need to consider sovereign immunity in this respect.

### ii. Defamation

The UT Health Defendants argue that they have sovereign immunity from Flynn's defamation claims, given the limited waiver of sovereign immunity under the Texas Tort Claims Act. Dkt 23 at 19–20. Flynn responded to some extent. Dkt 30 at 6.

The Texas Tort Claims Act "provides only a limited waiver for claims arising out of negligence." *St. Maron Properties, LLC v City of Houston,* 78 F4th 754, 764 (5th Cir 2023), citing Tex Civ Prac & Rem Code §101.021(1). But it—and the waiver of immunity it entails—doesn't apply to claims arising out of an intentional tort. Id, citing Tex Civ Prac & Rem Code §101.057(2).

Defamation is plainly an intentional tort under Texas law. *Leatherwood v Prairie View A & M Univ*ersity, 2004 WL 253275, *3 (Tex App—Houston [1st Dist], no pet); *Middaugh v InterBank*, 528 F Supp 3d 509, 561 (ND Tex 2021); *Thomas v City of Houston*, 2012 WL 4103932, *2 (SD Tex), quoting *Leatherwood*, 2004 WL 253275, at *3. This means that Flynn's defamation claims can't proceed against the UT Health Defendants because they aren't within the scope of the waiver of immunity under the Texas Tort Claims Act.

The claims against the UT Health Defendants for defamation will be dismissed.

### iii. Breach of contract

The UT Health Defendants argue that there is no applicable waiver of sovereign immunity for Flynn's claim for breach of contract. Dkt 23 at 20–21. Flynn didn't clearly respond to this argument, as she doesn't connect her sovereign immunity argument to the contract that she alleges to have been breached. Dkt 30 at 4–6 (stating that

individual defendants don't enjoy sovereign immunity because they aren't state employees). Regardless, the merits are easily addressed.

The Texas Supreme Court holds, "Only the Legislature can waive sovereign immunity from suit in a breach-of-contract claim." *Texas Natural Resource Conservation Commission v IT-Davy*, 74 SW3d 849, 858 (Tex 2002). It also holds that "the State does not waive its immunity from a breach-of-contract action by accepting the benefits of a contract." *Texas A&M University System v Koseoglu*, 233 SW3d 835, 840 (Tex 2007) (internal quotation marks omitted). "And absent special statutory permission, a party cannot pursue a breach of contract action against the State without first obtaining consent from the Legislature." Ibid. Texas courts have thus "uniformly held that as a matter of law contract and quasi-contract claims such as promissory estoppel and quantum meruit are barred by sovereign immunity." *Jackson v Texas Southern University,* 997 F Supp 2d 613, 648 (SD Tex 2014).

Flynn pleads no facts indicating that she obtained permission from the Texas Legislature to sue UT Health and the McGovern Medical School. Beyond this, Flynn at best theorizes in her first amended complaint that UT Health and McGovern implicitly waived immunity because they lost their "identity as a distinct entity" by placing residents in private hospitals. Dkt 19 at ¶38. That in no way meets the requisite standard to show waiver of sovereign immunity. To the contrary, the Fifth Circuit observes, "We will find waiver by implication from conduct only under narrow circumstances: we require that the state employ the power of the federal court in such a way that its intent to forego its acceptance of immunity be unequivocal." *Watson v Texas,* 261 F3d 436, 441 (5th Cir 2001).

The claims against the UT Health Defendants for breach of contract will be dismissed.

13

iv.   Violation of procedural due process

The UT Health Defendants argue that, because they aren't subject to suit under §1983, their sovereign immunity isn't abrogated. Dkt 23 at 21–22. Flynn responded to some extent. Dkt 30 at 2–3.

An action under §1983 requires a showing that the plaintiff suffered the deprivation of a right secured by the Constitution or laws of the United States, and that the deprivation was caused by someone acting under color of state law. *Baker v McCollan,* 443 US 137, 140 (1979). But it's clear that "Congress has not abrogated the sovereign immunity of the states as to claims brought under 42 USC §1981 or §1983." *Lewis v Anderson*, 2009 WL 10680365, *2 (SD Tex); *Richardson v Southern University*, 118 F3d 450, 453 (5th Cir 1997). What's more, "neither a state nor its officials acting in their official capacity are 'persons' subject to suit under §1983." *Streety v University of Texas at Arlington*, 2009 WL 10705151, *1 (ND Tex), citing *Will v Michigan Dept of State Police*, 491 US 58, 71 (1989); see also *Olivier v University of Texas System*, 988 F2d 1209, *1 (5th Cir 1993).

The UT Health System, McGovern Medical School, and the various doctors employed by them constitute state agencies and officials acting in their official capacities. Sovereign immunity thus bars §1983 claims by Flynn against them. The claims of violation of procedural due process by the UT Health Defendants will thus be dismissed.

c.   Violation of the ADA

To establish a *prima facie* case of disability discrimination under the ADA, the plaintiff must show that she (i) has a disability, (ii) was qualified for the job she held, and (iii) was "subject to an adverse employment decision on account of [her] disability." *EEOC v LHC Group Inc*, 773 F3d 688, 697 (5th Cir 2014), quoting *Zenor v El Paso Healthcare System, Ltd*, 176 F3d 847, 853 (5th Cir 1999); see also *Donaldson v Texas Department of Aging &*

*Disability Services*, 495 SW3d 421, 436 (Tex App—Houston [1st Dist] 2016, pet denied). The third element itself requires proof of "a causal connection between an adverse employment action and [the employee's] disability." *Rodriguez v Eli Lilly & Co*, 820 F3d 759, 765 (5th Cir 2016) (citation omitted). And the first element requires the plaintiff to show that "he or she (1) has 'a physical or mental impairment that substantially limits one or more major life activities;' (2) has a record of such impairment, or (3) is regarded as having such impairment." *Stewart v City of Houston Police Dept*, 372 Fed Appx 475, 477 (5th Cir 2010), quoting 42 USC §12102(1).

The first amended complaint nominally levels these claims "Against All Defendants for Violation of Titles I, II, and III of the Americans with Disabilities Act." Dkt 19 at 17 (point heading for first cause of action). But nothing clearly indicates which Title of the ADA applies to which Defendant. Indeed, no mention by name is made of Beaulieu or Pisklak in the portion of her complaint outlining these claims. See Dkt 19 at ¶¶59–67. Even so, the claims under Title I will be considered with respect to all of the remaining Defendants. But because the claims under Titles II and III are referenced specifically and only with respect to the UT Health Defendants, consideration will be limited to them here. See id at ¶¶65–66.

As to the Title I claims, in sum, the Memorial Hermann Defendants, the Harris Health Defendants, Beaulieu, and Pisklak argue that none of them can properly be characterized as Flynn's *employer*. See Dkts 20 at 14, 21 at 11, 26 at 9 & 27 at 5; see *LHC Group, Inc*, 773 F3d at 694; *Flynn v Distinctive Home Care, Inc*, 812 F3d 422, 426 (5th Cir 2016). For their part, the UT Health Defendants don't dispute characterization of UT Health itself as *employer* for purposes of the Title I claim, but they do argue that none of the individuals are. Dkt 23 at 24–25. They also argue that, as to all ADA claims regardless the Title, Flynn hasn't properly pleaded that she has a *disability* within the comprehension of the ADA or that she was *regarded as* such by them. Id at 23–24, citing 42 USC §12102(1)(A);

*Burton v Freescale Semiconductor, Inc*, 798 F3d 222, 230 (5th Cir 2015); *Harris v Utica Rental System, Inc*, 1996 WL 539954, *6 (ED La); see also *Stewart*, 372 Fed Appx at 477; *McInnis v Alamo Community College District*, 207 F3d 276, 280 (5th Cir 2000); *Garrett v AutoZone Inc*, 224 F3d 765, *2 (5th Cir 2000).

Except for light address as to the Memorial Hermann Defendants, Flynn responded to none of these arguments. Dkt 29 at 2–4 (as to Memorial Hermann Defendants); 32 at 4 (as to Harris Health Defendants), 36 at 4 (as to Beaulieu, with concession that he wasn't one of her "employers or joint employers") & 38 (as to Pisklak). Given the above dismissals as to many ADA claims upon a finding of waiver, the merits need only be addressed as to the Title I claim against the Memorial Hermann Defendants.

Title I of the ADA only applies to employers, employment agencies, labor organizations, or labor management committees. 42 USC §12111. And it's well-established that the ADA only applies in this regard in the employment context. See *LHC Group, Inc*, 773 F3d at 694; *Flynn*, 812 F3d at 426. To save her claims from dismissal, then, Flynn must show that the Memorial Hermann Defendants employed her. This she fails to do.

The contract attached as an exhibit to the first amended complaint states that Flynn was employed by the UT Health Science Center. See Dkt 19-1. To the contrary and in conclusory terms, Flynn avers, "At all pertinent times Defendants acted as the agent, employees, employers, joint venturer, co-conspirator, partner, alter ego, or in some other representative capacity of one another. At all times, each Defendant *was somehow legally responsible for* the acts of the others and each Defendant is legally responsible for all the acts alleged below." Dkt 19 at ¶22 (emphasis added). But the time for Flynn to establish whether the Memorial Hermann Defendants *was somehow legally responsible for* the actions of others was in her first amended complaint or, perhaps, in her response. At best, she indicates only that she spent significant time during her residency at their hospitals. Id at 35–36; Dkt 29 at 3–

4. What's missing are any facts pleading that Flynn was actually employed by any Defendant other than UT Health. As such, nothing establishes an employer-employee relationship as to the Memorial Hermann Defendants.

The claims for violations of Title I of the ADA by the Memorial Hermann Defendants will be dismissed.

### d.  Defamation claims

The first amended complaint asserts defamation claims against the Memorial Hermann Defendants, the UT Health Defendants, Beaulieu, and Pisklak (along with McNutt, who has been previously dismissed). Dkt 19 at ¶¶75–80. Flynn asserts that "oral and written statements" were made about her "[f]rom July 2022 to the present" by (apparently) various of these Defendants at various times. Id at ¶76. While such statements are in no way specified, they are alleged to have "claimed that Plaintiff suffered from a psychological, emotional, and psychiatric condition or disease, was professionally incompetent and unfit for the practice of medicine, that Plaintiff should not be allowed to start another residency, and that Plaintiff's work performance was subpar." Ibid; see also id at ¶49 (alleging that non-specified statements made about Flynn "of having a psychiatric disease and of having various emotional problems"), ¶54–55 (alleging that Bobrow and Van Meter "lied to at least one other residency director in California and stated that Plaintiff was unfit for duty" and falsely "reported Plaintiff to the Texas Medical Board claiming Plaintiff was impaired due to drugs or alcohol").

After the sovereign immunity and waiver dismissals noted above, the defamation claim remains pending for analysis only as to the Memorial Hermann Defendants, Beaulieu, and Pisklak.

Under Texas law, defamation requires that the plaintiff allege and prove publication by the defendant of a false statement of fact to a third party that was defamatory concerning the plaintiff, with the requisite degree of fault

17

(and damages, in some cases). *In re Lipsky*, 460 SW3d 579, 593 (Tex 2015). The pleading standards are also stringent. "Defamation claims must specifically state the time and place of publication of such statements." *Gipson v Wal-Mart Stores, Inc*, 2008 WL 4844206, \*9 (SD Tex), on reconsideration, 2009 WL 10695075 (SD Tex), citing *Ameen v Merck & Co, Inc*, 226 Fed Appx 363, 2007 WL 1026412, \*5 (5th Cir 2007). Such claims also have to identify the specific statements made. *Jackson v Dallas Independent School Dist*rict, 1998 WL 386158, \*5 (ND Tex), aff'd, 232 F3d 210 (5th Cir 2000), citing *Ersek v Township of Springfield, Delaware County*, 822 F Supp 218, 223 (ED Pa 1993).

The first amended complaint in no way meets these pleading standards. Flynn nowhere identifies any specific statement beyond conclusory and general assertions. No dates of publication are alleged. No places of publication are specified. Indeed, no specific, actual statement is identified and attributed to any particular Defendant as of a date and place certain.

In short, general allegations that multiple Defendants made false statements to multiple people across a large range of times and places fails to plead a valid claim for defamation. There being no defamation viably pleaded, there's also no basis upon which to pursue vicarious liability. See *Miller v Target Corp*, 854 F Appx 567, 570 (5th Cir 2021) (holding that vicarious liability claim can't be pursued after dismissal of underlying tort claim).

The defamation claims will thus be dismissed.

### 4.   Leave to replead

A district court "should freely give leave [to amend] when justice so requires." FRCP 15(a)(2). The Fifth Circuit holds that this "evinces a bias in favor of granting leave to amend." *Carroll v Fort James Corp*, 470 F3d 1171, 1175 (5th Cir 2006) (quotation marks omitted), quoting *Dussouy v Gulf Coast Investment Corp*, 660 F2d 594, 597 (5th Cir 1981). But whether to grant such leave is within the sound discretion of the district court. *Pervasive Software Inc v*

*Lexware GmbH & Co KG*, 688 F3d 214, 232 (5th Cir 2012), quoting *Wimm v Jack Eckerd Corp*, 3 F3d 137, 139 (5th Cir 1993). It may be denied "when it would cause undue delay, be the result of bad faith, represent the repeated failure to cure previous amendments, create undue prejudice, or be futile." *Morgan v Chapman*, 969 F3d 238, 248 (5th Cir 2020), citing *Smith v EMC Corp*, 393 F3d 590, 595 (5th Cir 2004).

The operative pleading here is the first amended complaint. Dkt 19. This is so because Flynn has already repleaded her claims once, when faced with prior motions to dismiss brought as against her original complaint. See Dkts 9, 11, 14, 15 & 16. She has thus already been afforded ample opportunity to cure pleading defects. And when asked at hearing whether Flynn stood by her amended complaint and responses as sufficient to withstand the motions to dismiss, Flynn's counsel replied in the affirmative. Dkt 61 at 5–6.

As noted above, the responses by Flynn to the remaining motions to dismiss were also utterly deficient, with the longest including only five pages of substantive material, and the shortest less than two. Dkts 29, 30, 32, 36 & 38. Given such wide-ranging waiver and abandonment of claims, she isn't entitled to any chance at repleading them. See *Black*, 461 F3d at 588 n 1 (failure to defend or to pursue claim beyond complaint constitutes abandonment); *Magee*, 261 F Supp 2d at 748 n 10 (failure to brief an argument waives it); see also *Bates*, 2021 WL 5355555, at *2.

Flynn has failed to cure her deficient pleadings in her second attempt, while mustering no sustained factual or legal argument suggesting that such could be improved. This leads to a finding that further pleading would be futile, while creating undue prejudice to Defendants. Leave to further replead thus won't be allowed.

5.  Conclusion

The motions to dismiss that remain pending are GRANTED. Dkts 20 (by Memorial Hermann Defendants), 21

(by Harris Health Defendants), 23 (by UT Health Defendants), 26 (by Beaulieu), & 27 (by Pisklak).

All remaining claims are DISMISSED WITH PREJUDICE.

SO ORDERED.

Signed on ___August 20, 2024___, at Houston, Texas.


Hon. Charles Eskridge
United States District Judge